## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 15–30786** |
| **CALMENA ENERGY SERVICES INC.,** | § | |
| | § | **Chapter 15** |
| Debtor in a foreign proceeding. | § | |
| In re: | § | |
| | § | **CASE NO. 15–30787** |
| **CALMENA ENERGY SERVICES (USA) CORP.,** | § | |
| | § | **Chapter 15** |
| | § | |
| Debtor in a foreign proceeding. | § | |
| In re: | § | |
| | § | **CASE NO. 15–30789** |
| **CALMENA DRILLING SERVICES LLC,** | § | |
| | § | **Chapter 15** |
| | § | |
| Debtor in a foreign proceeding. | § | |
| In re: | § | |
| | § | **CASE NO. 15–30790** |
| **CALMENA DRILLING SERVICES US LP,** | § | |
| | § | **Chapter 15** |
| | § | |
| Debtor in a foreign proceeding. | § | |

## RECEIVER'S PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING PURSUANT TO SECTIONS 1515 AND 1517 OF THE UNITED STATES BANKRUPTCY CODE AND RELATED RELIEF

Now comes Ernst & Young Inc. ("**EY**"), as the court-appointed receiver (the "**Receiver**") of Calmena Energy Services Inc. ("**CESI**"); Calmena Energy Services (USA) Corp. ("**CES USA Corp.**"); Calmena Drilling Services LLC ("**Drilling LLC**"); Calmena Drilling Services US LP ("**Drilling LP**," together with CESI, CES USA Corp., and Drilling LLC, the "**Debtors**") based upon the Receivership Order dated January 20, 2015, evented by the Court of Queen's Bench of Alberta in the Judicial Centre of Calgary, Canada (the "**Canadian Proceeding**"), and authorized foreign representative of the above-captioned Debtors, by and through its undersigned counsel,

respectfully to file this *Receiver's Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief* (the "**Petition**"), and states:

## I.
## JURISDICTION, VENUE, AND CORE ALLEGATIONS

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and 11 U.S.C. § 1501 of the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. § 1410. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

## II.
## PRELIMINARY STATEMENT

2.      The Debtors are a group of Canadian-based companies that have been placed into a receivership proceeding under the Bankruptcy and Insolvency Act in Canada, which is a foreign proceeding within the meaning of 11 U.S.C. § 101(23).  The Receiver is the Canadian court-appointed receiver, who is a foreign representative within the meaning of § 101(24).

3.      The Receiver files the Petition seeking entry of an order recognizing the Canadian Proceeding as foreign main proceeding pursuant to 11 U.S.C. § 1517, thereby granting related relief pursuant to § 1520 and additional relief pursuant to § 1521.  Alternatively, should the Court not recognize the Canadian Proceeding as foreign main proceedings (either in whole or in part), the Receiver seeks recognition of the Canadian Proceeding as foreign nonmain proceedings, as defined in § 1502(5), and seeks additional relief available under § 1521.

## III.
## SUPPORT FOR THE PETITION

4.      The Receiver attaches the following Exhibits to the Petition:

| Exhibit | Description | Comment |
|---------|-------------|---------|
| A | Form of Order Granting Receiver's Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief | |
| B | Declaration of Neil Narfason, Court-Appointed Receiver, in Support of the Petition for Recognition as Foreign Main Proceeding and Other Pleadings Filed Concurrently Therewith | |
| C | Calmena's Delegation of Authority | |

5.      The Receiver also requests that the Court take judicial notice of the record in the above-referenced case and relies upon *Receiver's Notice of Filing of Documents in Support of First Day Motions* (the "**Notice**") filed contemporaneously with the Petition.

## IV.
## BACKGROUND

### A.      The Structure and General Operations of the Debtors.

6.      The above-referenced Debtor are four affiliated entities under the ambit of Calmena Energy Services Inc. ("**Calmena**" or "**CESI**").  CESI is a corporation formed under the laws of Alberta, Canada with its principal place of business located in Calgary, Alberta, Canada. CESI is a public company in Canada with shares trading on the Toronto Stock Exchange under the ticker symbol TSX:CEZ.

7.      Calmena is an international oilfield services company with operational entities providing well bore construction services and both conventional and directional drilling.  The name "Calmena" is derived from the acronym "CALAMENA," which represents the locations around the world in which the various affiliates of the above-referenced Debtors have operated— CA: Canada, AL: Alberta, CAL: Calgary, LA: Latin America, ME: Middle East and Mexico, NA: North Africa and North America.

8.      Although various Calmena Entities (defined below) work in resource basins in countries around the world, the control and operations are anchored in Calgary, Alberta, Canada. Calgary is the home of the Debtors' headquarters and the directors and officers, senior management, financial services, strategic operations, safety auditors, and investor relations. Human resources are directed, and compensation and benefits are set, by Canadian management. The Calmena Entities' books and records are maintained in Canada, and Calmena's legal counsel (Burnet, Duckworth & Palmer LLP), auditor (Deloitte LLP), and banking relationship (HSBC Bank Canada) are all based in Canada.  All of Calmena's loans and credit facilities are governed by Canadian law.

9.      CESI is the 100-percent Canadian parent company of Calmena Energy Services (USA) Corp. ("**CES USA Corp.**"), a corporation formed under the laws of Delaware.  CES USA Corp. owns 100 percent of Calmena Drilling Services LLC ("**Drilling LLC**"), a corporation formed under the laws of Nevada, and owns a ninety-nine-percent limited partner interest in Calmena Drilling Services US LP ("**Drilling LP**"), a limited partnership formed under the laws of Texas.  Drilling LLC owns the remaining one percent interest in Drilling LP as the general partner.

10.      Eleven entities are subject to the Receivership Order in the Canadian Proceeding. In addition to the above-referenced Debtors, the following related entities are subject to the Receivership Order: Calmena Energy Holdings Ltd.; Calmena Energy Services Operating Limited Partnership; 1414995 Alberta Ltd.; BW Services Luxembourg Sarl; BWES Services de Mexico, S. de. R.L. de C.V.; Pan American Drilling S. de R.L. de C.V.; and Calmena

Luxembourg Holdings S.a.r.l. (the "**Non-Debtor Entities**").[1]  The Non-Debtor Entities are all affiliates of the above-referenced Debtors but are not included in the U.S. chapter 15 cases.

11.    CESI, the Canadian parent and affiliate of the above-referenced Debtors and the Non-Debtor Entities, also has several other affiliates not included in either the U.S. chapter 15 cases or the Canadian Proceedings (the "**Other Entities**").  The above-referenced Debtors, the Non-Debtor Entities, and the Other Entities may be referenced collectively as the "**Calmena Entities**."

**B.    Business Operations of the Debtors.**

12.    Until September 2009, Calmena was focused on providing contract drilling, wireline services, frac fluids management, and equipment rentals in the Western Canadian sedimentary basin.[2]  Calmena's current President and Chief Executive Officer, John King, joined Calmena in June 2009 and began executing an expansion strategy into international markets. Calmena acquired six drilling rigs operating in Mexico and a private directional drilling services company operating in the United States and Mexico.  Calmena also acquired two drilling rigs and related equipment, associated contracts, and operating infrastructure in Libya, and it opened a regional office in Dubai in connection with the Libyan operations.  In April 2010, Calmena acquired a privately held drilling technology developer and manufacturer to enhance directional drilling service applications.  The company also expanded with operations in Colombia and Brazil.

---

[1]    The Receiver's Canadian counsel, Borden Ladner Gervais LLP, has indicated to the undersigned counsel that the Receiver intends to seek removal from the Canadian Proceeding of the Non-Debtor Entities based in Luxembourg and Mexico, which include: BW Services Luxembourg Sarl; BWES Services de Mexico, S. de R.L. de C.V.; Pan American Drilling S. de R.L. de C.V.; and Calmena Luxembourg Holdings S.a.r.l.  As of the Petition Date, such relief had not be granted by the Canadian Court, but the Receiver will supplement the Petition as necessary.

[2]    Calmena was formerly known as BlackWatch Energy Services Corp., but changed its name to Calmena Energy Services in June 2010.

---

13.     Following the expansion, Calmena's operations were located in resource basins outside of Canada, but the management, strategic and financial decisions, and other central enterprise services remained located in the Calgary headquarters.  Calmena's directional drilling operations were completed through the regional location in Oklahoma City, Oklahoma.   Its conventional drilling and fabrication operations in the United States operated through the regional location in Conroe, Texas.  The Conroe office was also responsible for operations in Mexico.

C.     **Events Leading to the Commencement of the Canadian Proceeding.**

14.     By 2014, Calmena's business positions were deteriorating.  A key employee of Calmena's directional drilling business in the Oklahoma City regional location left Calmena, taking with him approximately half of the work force and most of Calmena's contracts and critical business relationships in the U.S. directional drilling business.  Declining demand for drilling contracts oppressed cash flows for the Conroe location.  Calmena suspended operations in Libya following political unrest in the region, resulting in cash outflows from the stagnant Libyan and Dubai operations.  Calmena ceased operations in Colombia, retaining only two employees to collect outstanding receivables and to wind down operations.  Only the Mexican operations were producing sufficient cash flows to break even as to the Mexican operations but insufficient to fund cash flow shortages of the Calmena operations in the United States and corporate headquarters in Canada.

15.     In October 2014, Calmena sold its assets and subsidiary in Brazil.  Calmena's subsidiary in Brazil owned four conventional drilling rigs and one heli-rig that had not been contracted in over a year.

16.    In May 2014, Calmena sold its Canadian oilfield service equipment rental and frac fluids divisions.  Both of these divisions generated positive cash flow, and the proceeds from the sale were used to pay down debt owing to HSBC Bank Canada and to fund Calmena's working capital.

17.    Despite drastic reductions to its operations internationally, the headquarters in Canada remained relatively unchanged.  This situation resulted in an imbalance of the corporate structure with the managerial, financial, and strategic presence in Calgary outsizing the demand of a more modest operational presence.  The mismatch is size also created a cash flow problem as corporate overhead became significantly higher than comparably sized oilfield services companies.

18.    In October 2014, HSBC Bank Canada retained EY to monitor Calmena's financial and operational positions, to evaluate potential disposition plans, and to report its findings to HSBC Bank Canada.

19.    On January 20, 2015, HSBC Bank Canada filed an application for receivership with the Court of Queen's Bench of Alberta in the Judicial Centre of Calgary, Canada (the "**Canadian Court**"), resulting in the Receivership Order.

**D.    The Canadian Proceeding.**

20.    The Bankruptcy and Insolvency Act ("**BIA**") is the one of two pieces of federal legislations in Canada applicable to bankruptcies and insolvencies.[3]  Bankruptcy and Insolvency

---

[3]    The second federal legislation in Canada concerning bankruptcies and insolvencies is the Companies' Creditors Arrangement Act ("**CCAA**"), which affords financially troubled corporations the opportunity to restructure their financial affairs through a "Plan of Arrangement."  Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (Can.).  The CCAA process is akin to chapter 11 of the Bankruptcy Code, affording companies an opportunity to restructure operations rather than liquidate.  *See In re Fracmaster, Ltd.*, 237 B.R. 627, 629 n.3 (Bankr. E.D. Tex. 1999).

Act, R.S.C. 1985, c. B-3 (Can.).  The BIA governs both voluntary and involuntary bankruptcy liquidations and provides for debtor reorganizations.

21.     The BIA also authorizes a court to appoint a receiver upon application by a secured creditor.  *Id.* § 243(1).  Such court-appointed receivers are given a mandate and specific powers as set out in the order appointing the receiver.  These duties typically include: (1) taking possession and control of the property and assets of the debtor; (2) marketing and selling such property and assets in a commercially reasonable manner (whether as a going concern, en-bloc, or otherwise) and under the supervision and approval of the appointing court; and (3) distributing the proceeds of such sales to the stakeholders in accordance with the legal entitlement.  The appointing court has broad discretion to authorize the receiver to "take any other action that the court considers advisable."  *Id.* § 243(1)(c).

22.     A court-appointed receiver under the BIA is a "national" receiver, meaning that a receiver administers assets in each of Canadian's ten provinces and three territories typically without further order of provincial courts.  The BIA and its related legislation (the Companies' Creditors Arrangement Act) are federal legislation.  But provincial legislative jurisdiction governs property and civil rights, potentially affecting some insolvency-related matters, similar to the interplay between state and federal law in the United States.  Nonetheless, the BIA provides a statutory framework for a court-appointed receiver to carry out its mandate on a national basis rather than relying on the various provincial statues or courts for its authority.

23.     On January 20, 2015, the Canadian Court entered the Receivership Order pursuant to section 243(1) of the BIA against the Debtors and the Non-Debtor Entities.  The Receivership Order empowers and authorizes the Receiver to take numerous steps involving the property of the entities subject to the Canadian Proceeding.  Receivership Order ¶ 3.  Likewise,

the Receivership Order grants the Receiver access to all of the Debtors' books, records, contracts, securities, and information. *Id.* ¶¶ 4–6. Additionally, the Receivership Order imposes a stay of proceedings against the Receiver, the Debtors, or the Debtors' property similar to the protections available under 11 U.S.C. § 362(a). *See id.* ¶¶ 7–10.

24.     Pursuant to the ability to operate the Debtors' business, the Receivership Order grants the Receiver power to terminate all of the Debtors' employees. *Id.* ¶¶ 13–14. Finally, the Receivership Order includes a request by the Canadian Court for "aid and recognition by any court . . . having jurisdiction in Canada, the United States . . . , and any other jurisdiction in which the [Debtor's property] may be located, to give effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." *Id.* ¶ 28.

**E.     Events Between the Filing of the Canadian Proceeding and the Chapter 15 Cases.**

25.     Once appointed as Receiver, EY began acting pursuant to the authority provided in the Receivership Order. At the time of the Receivership Order, Calmena had one active directional drilling engagement through the Oklahoma City location that was completed shortly thereafter. The Receiver has notified Calmena's insurance carriers of the Receivership Order and taken appropriate steps to take control of Calmena's policies.

26.     The Receiver has since terminated most of Calmena's former employees in Canada and the United States, retaining a few key employees in Calgary, Conroe, and Oklahoma City. The Director of Finance has been retained in Calgary to prepare and file final tax returns for the Calmena Entities. Similarly, some employees in Oklahoma City and Conroe have been retained to inventory remaining assets, wind up operations, and collect outstanding receivables.

27.     The Receiver has performed physical inspections of the drilling rigs and related equipment in Oklahoma City, Houston, and Mexico.[4]   As to the Non-Debtor Entities, the Receiver has taken over and continued operations in Mexico as it investigates possibilities to divest the operations as a going concern.  The Receiver has retained Calmena's employees in Dubai for the purpose of soliciting offers for the sale of Calmena's conventional drilling business in Libya.  Likewise, the Receiver continues to collect receivables for and wind down the former Colombia operations.

**F.     The Chapter 15 Cases.**

28.     Contemporaneously with the filing of the Petition, the Receiver filed Official Form No. 1 Chapter 15 petitions for each of the Debtors pursuant to 11 U.S.C. §§ 1504, 1509(a), and 1515(a).  The purpose of these chapter 15 cases is to seek protection for the remaining Calmena assets in the United States and cooperation with the Canadian Court as the Receiver executed its charge in the Receivership Order.

29.     Pursuant to the Receivership order, the Receiver is a foreign representative in a foreign proceeding, and hereby seeks relief under chapter 15 of the Bankruptcy Code.

**V.**
**RELIEF REQUESTED**

30.     The Receiver requests the following relief provided automatically upon recognition under § 1520 and pursuant to this Court's discretion under §§ 1521 and 105(a).  The distinction between the automatic and discretionary nature of the relief requested turns on whether the Court recognizes the Canadian Proceeding as "a foreign main" or "a foreign nonmain proceeding."  A foreign main proceeding "means a proceeding pending the country

---

[4]     The Receiver was only able to inspect three drilling rigs in Mexico as two rigs are currently leased for ongoing engagements.

where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).  A foreign nonmain proceeding "means a foreign proceeding pending, other than a foreign main proceeding, in a country where the debtor" has "any place of operations where the debtor carries out a nonstransitory economic activity."  *Id.* § 1502(2), (5).

31.    As discussed more fully below, the Receiver respectfully submits that the Canadian Proceeding is a foreign main proceeding within the meaning of § 1502(4) because the Debtors' center of main interests is in Canada.  Accordingly, the Receiver requests that the Court grant the automatic relief available for main proceedings under § 1520, as well as other discretionary relief described below, requested in the proposed order attached to the Petition as **Exhibit A** (the "**Proposed Order**").

## A.    Relief Requested as Provided by Statute.

### 1.    *Automatic Relief When a Foreign Proceeding is Main.*

32.    Certain relief is automatic when a foreign proceeding is recognized as main. 11 U.S.C. § 1520(a).  Upon recognition of a foreign proceeding that is a foreign main proceeding—

(1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

(3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

33.    Accordingly, the Receiver seeks the above relief in the Proposed Order attached to the Petition as Exhibit A, recognizing the Canadian Proceeding as a foreign main proceeding.

**2.      *Automatic Relief Whether Foreign Proceeding is Main or Nonmain.***

34.      Certain relief is automatic upon recognition of a foreign proceeding, whether main or nonmain.  Upon recognition of a foreign proceeding, the foreign representative may intervene in any proceedings in a state or federal court in the United States in which the debtor is a party.  11 U.S.C. § 1524.  Likewise, upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending under another chapter of this title to initiate actions under §§ 522, 544, 545, 547, 548, 550, 553, and 724(a).  *Id.* § 1523(a). Accordingly, the Receiver seeks such relief in the Proposed Order attached hereto as Exhibit A.

**3.      *Discretionary Relief to Protect Creditors and the Debtors.***

35.      Certain discretionary relief is available upon recognition of a foreign proceeding under 11 U.S.C. § 1521 as discussed below.  The court may grant relief under § 1521 only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.  *Id.* § 1522(a).  The Receiver contends that the discretionary relief requested is for the protection of the creditors and the Debtors.

**4.      *Automatic Relief Whether Foreign Proceeding is Main or Nonmain.***

36.      "Any appropriate" discretionary relief is available upon recognition of a foreign proceeding, whether a foreign proceeding is main or nonmain. 11 U.S.C. § 1521(a) ("Upon recognition of a foreign proceeding, *whether main or nonmain*, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant *any appropriate relief*.") (emphasis added).  In granting relief under § 1521 to a representative of a foreign nonmain proceeding, the court must be satisfied that the relief relates to assets that, under the law of the United States,

should be administered in the foreign nonmain proceeding or concerns information required in that proceeding. *Id.* § 1521(c). That relief includes:

> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
>
> (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
>
> (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
>
> (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;
>
> (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;
>
> (6) extending relief granted under section 1519(a); and
>
> (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724 (a).

11 U.S.C. § 1521(a).

37.     In addition, under § 1521(b), upon recognition of a foreign proceeding, whether main or nonmain, the court may entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected. Accordingly, the Receiver seeks the above relief in the Proposed Order attached to the Petition as Exhibit A.

B.    <u>**Specific Relief Requested.**</u>

38.    The Receiver hereby respectfully requests that this Court enter an order pursuant to 11 U.S.C. §§ 105, 1507, 1517, 1520, and 1521, substantially in the form of the Proposed Order providing the following relief:

- Recognition of the Canadian Proceeding as a foreign main proceeding as defined in § 1502(4);

- Granting to the Receiver the relief afforded under § 1520 as is provided by right upon the recognition of the Canadian Proceeding as a foreign main proceeding, with the specification that the Receiver may continue to operate the Debtors' business pursuant to § 1520(a)(3);

- Granting further additional relief as authorized by § 1521, including without limitation:

  ○ Staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of the Debtors, including any action or proceeding against EY in its capacity as Receiver of the Debtors, to the extent not stayed under § 1520(a);

  ○ Staying execution against the assets of the Debtors to the extent not stayed under § 1520(a);

  ○ Suspending the right of any person or entity other than the Receiver to transfer or otherwise dispose of any assets of the Debtors to the extent not suspended under § 1520(a), unless authorized in writing by the Receiver or by order of this Court;

      ○     Providing for the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations, or liabilities of the Debtors, and finding that such information is required in the Canadian Proceedings under the law of the United States; and

      ○     Entrusting to the Receiver the administration or realization of all or part of the assets of the Debtors within the territorial jurisdiction of the United States;

- Otherwise granting comity to and giving full force and effect to the Canadian Court, the Canadian Proceeding, and the Receivership Order; and

- Awarding the Receiver such other and further relief as this Court deems just and appropriate.

39.     The Receiver respectfully submits that the Canadian Proceedings should be recognized as a foreign main proceeding as defined in § 1502(4).  If, however, the Court determines the Canadian Proceedings are not foreign main proceedings (either in whole or in part), the Receiver seeks recognition of the Canadian Proceedings as a foreign nonmain proceeding, as defined in § 1502(5), and requests that the Court grant the relief requested above under the Court's discretion pursuant to § 1521.

**VI.**
**BASIS FOR RELIEF REQUESTED**

40.     The Receiver submits the following basis for the above-requested relief.

**A.**     **Statutory Authority.**

41.     A chapter 15 case is commenced when a foreign representative files a petition for recognition of a foreign proceeding.  11 U.S.C. § 1515; *In re Oversight & Control Comm'n of*

*Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).  The petition must be accompanied by certain documentary evidence, which the court may presume to be authentic.   11 U.S.C. § 1516(b).  The Court must grant the request for recognition if it finds:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

*Id.* § 1517(a).

42.     A decision or certificate from a foreign court indicating the foreign proceeding is a "foreign proceeding," as defined in § 101(23), is presumptively correct.  *Id.* § 1516(a). Similarly, a decision or certificate from a foreign court indicating that the foreign representative is a "foreign representative," as defined in § 101(24), is presumptively correct.  *Id.*

43.     Accordingly, as discussed more fully below, the Canadian Proceeding is presumptively a foreign proceeding under the definition of § 101(23) based on paragraph 28 of the Receivership Order, which identifies the Canadian Proceeding as a foreign proceeding and requests assistance of foreign judicial and administrative bodies.   Receivership Order ¶ 28. Likewise, the Receiver is presumptively a foreign representative as defined in § 101(24) based on paragraphs 27 and 29 of the Receivership Order, which authorize the receiver to initiate proceedings in foreign jurisdictions related to the Canadian proceeding.  *Id.* ¶¶ 27, 29.  EY is also a "person" under the definition of § 101(41).[5]  Finally, the Petition meets the requirements of § 1515—namely, the evidence of the foreign proceedings and the foreign representative has been provided in English by the certified copy of the Receivership Order.   Accordingly, the requirements for recognition of the Canadian Proceeding as a foreign proceeding are met.

[5] The term "person" includes an individual, a partnership, and a corporation.  11 U.S.C. § 101(41).

**B.**     <u>**Rule Requirements for Recognition of the Canadian Proceedings.**</u>

44.     A petition for recognition of a foreign proceeding under chapter 15 of the Code must state the country where the debtor has its center of main interests.  Fed. R. Bankr. P. 1004.2(a).  The center of main interests for each of the Debtors is Alberta, Canada.  This attestation has been provided in the Debtors' Official Form 1 Petitions.

45.     The petition for recognition must also identify each country in which a foreign proceeding by, regarding, or against the debtor is pending.  *Id.*  The Debtors are debtors in the foreign proceeding as described in the Receivership Order.  This information has also been provided in the Debtors' Official Form 1 Petitions.

46.     A foreign representative filing a petition for recognition under chapter 15 shall file with the petition a corporate ownership statement containing the information described in Rule 7007.1.  Fed. R. Bankr. P. 1007(a)(4).  Such a corporate ownership statement has made in the *Statement of Foreign Representative Pursuant to Fed. R. Bankr. P. 1007(a)(4)* (the "**Statement**") filed contemporaneously with the Petition.

47.     A foreign representative filing a petition for recognition under chapter 15 must file with the petition (unless the court orders otherwise), a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519.  *Id.*  As indicated in the Statement, the Receiver is not seeking preliminary relief under § 1519.

**C.**     <u>**Requirements for a Petition for Recognition.**</u>

48.     A petition for recognition must be accompanied by any one of the following:

---

(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

49.     Accordingly, in compliance with § 1515(b), attached to the Notice is the Receivership Order from the Canadian Proceedings, which may be presumed authentic.  *See id.* § 1516(b).

**D.     The Canadian Proceeding Pending Is a "Foreign Proceeding."**

50.     "Foreign proceeding" is defined in the Bankruptcy Code as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

51.     The Canadian Proceeding falls squarely within the definition of "foreign proceeding."  Before Congress adopted chapter 15 of the Code in 2005, U.S. courts routinely recognized cases filed under Canada's federal bankruptcy and insolvency statutes, the BIA and the CCAA, to be "relating to insolvency."  *See, e.g., Tradewell, Inc. v. Am. Sensors Elecs., Inc.,* No. 96 CIV 2474, 1997 WL 423075, at *1 n.1 (S.D.N.Y. July 29, 1997) ("The CCAA is a broad statute, the purpose of which is to 'provide insolvent debtors with the opportunity to restructure their financial affairs with their creditors.'").  Moreover, since the adoption of chapter 15, cases filed under Canada's insolvency schemes have consistently been recognized as "foreign

proceedings." *See, e.g.*, *In re Poseidon Concepts Corp.*, No. 13–15893 (Bankr. D. Colo. May 15, 2013), ECF No. 60 (recognizing Canadian receivership proceeding as foreign proceeding); *In re Nortel Networks, Inc.*, 469 B.R. 478, 487 (Bankr. D. Del. 2012) (noting that the Court entered an Order recognizing the proceeding under the CCAA as a foreign main proceeding under chapter 15 of the Code); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 688 (Bankr. S.D.N.Y. 2010) ("It is clear that the Canadian Proceedings should be recognized as a foreign main proceeding."); *In re Gandi Innovations Holdings, LLC*, No. 09-51782-C, 2009 WL 2916908, at *1 (Bankr. W.D. Tex. June 5, 2009) ("[T]he CCAA Proceeding is a foreign proceeding entitled to recognition under Chapter 15 of the Code."); *In re Petition of Ernst & Young, Inc.*, 383 B.R. 773, 777 (Bankr. D. Colo. 2008) (holding that a proceeding under the CCAA was a "foreign proceeding").[6]

## E.   The Receiver Is a "Foreign Representative."

52.     Section 101(24) of the Code defines "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

53.     The Receiver may serve as the "foreign representative" because it constitutes a "person or body."  "Person" is defined under § 101(41) to include an individual, partnership, or corporation.  Because the Receiver is an incorporated entity, it therefore qualifies as a "person"

---

[6]       For numerous other examples of U.S. courts recognizing Canadian insolvency proceedings a "foreign proceedings," see *In re GasFrac Energy Servs., Inc.*, No. 15–50161 (Bankr. W.D. Tex. Feb. 2, 2014), ECF No. 46; *In re Angiotech Pharm., Inc.*, No. 11–10269 (Bankr. D. Del. Feb. 22, 2011), ECF No. 83; *In re Metcalfe & Mansfield Alt. Invs., et al.*, No. 09–16709 (Bankr. S.D.N.Y. Jan. 5, 2010), ECF No. 28; *In re Canwest Global Communications Corp., et al.*, No. 09–15994 (Bankr. S.D.N.Y. November 3, 2009), ECF No. 30; *In re SemCanada Crude Co.*, No. 09–12637 (Bankr. D. Del. Aug. 27, 2009), ECF No. 30; *In re Quebecor World Inc.*, No. 08–13814 (Bankr. S.D.N.Y. July 1, 2009), ECF No. 12; *In re Biltrite Rubber (1984) Inc., et al.*, No. 09–31423 (Bankr. N.D. Ohio Apr. 2, 2009), ECF No. 58; *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. Aug. 6, 2008), ECF No. 37; *In re Destinator Technologies, Inc.*, No. 08-11003 (Bankr. D. Del. June 6, 2008), ECF No. 43.

and can accordingly serve as a "foreign representative."  Additionally, the Receiver has been authorized in the Canadian Proceedings to act as the Debtors' foreign representative, and the Receivership Order specifically orders and decrees:

> The Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Receiver is authorized and empowered to act as representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada.

Receivership Order ¶ 29.

54.     The Court is therefore entitled to presume that the Receiver is a proper "foreign representative."  *See* 11 U.S.C. § 1516(b).  Additionally, Courts have previously considered a receiver appointed pursuant to BIA § 243(1) to be a duly authorized "foreign representative." *See, e.g.*, *In re Poseidon Concepts Corp.*, No. 13–15893 (Bankr. D. Colo. May 15, 2013), ECF No. 60 (recognizing Canadian receivership proceeding as foreign proceeding); *In re Baronet U.S.A. Inc.*, No. 07–13821 (Bankr. S.D.N.Y. Jan. 1, 2008), ECF No. 15 (same).

**F.     The Canadian Proceeding Should Be Recognized as a Foreign Main Proceeding Because Canada Is the Location of the Debtors' Center of Main Interests.**

55.     A foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests.  11 U.S.C. § 1517(b). The term "center of main interests" ("**COMI**") is not defined in the Code.  COMI, however, has been equated with a debtor's principal place of business.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 BR 325, 336 (S.D.N.Y. 2008) (citing *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 629 (E.D. Cal. 2006)).

56.     The Fifth Circuit has identified five non-exhaustive factors in determining a debtor's COMI: (1) the location of those who actually manage the debtor (which could be the

headquarters of a holding company); (2) the location of the debtor's headquarters; (3) the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or the majority of creditors affected by the case; and (5) the jurisdiction whose law would apply to most disputes. *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1023 (5th Cir. 2010) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

57.     Moreover, the factor test employed in *In re Ran* mirrors the COMI analysis for multinational entities suggested in UNCITRAL Guide to Enactment of the UNCITRAL Model Law on Cross–Border Insolvency (the "**Guide**").  United Nations Commission on International Trade Law, *UNCITRAL Legislative Guide on Insolvency Law, Part Three: Treatment of Enterprise Groups in Insolvency,* ¶¶ 6–15, U.N. Sales No. E.12.V.16 (2012).  Several U.S. courts have cited to the Guide as authority for interpreting chapter 15, relying on § 1508 and legislative history.  *E.g.*, *Jaffe v. Samsun Elecs. Co., Ltd.*, 737 F.3d 14 (4th Cir. 2013) ("Interpretation of this chapter on a uniform basis will be aided by reference to the Guide and the Reports cited therein . . . .") (quoting H.R. Rep. 109–31, at 109–10 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 172–73).

### 1.     *First Factor: The Debtors' Central Management in Located in Canada.*

58.     The first—and most important—factor in this analysis favors Canada as the Debtors' COMI because Canada is the Debtors' principal place of business or nerve center.  Courts, including those within the Fifth Circuit, have utilized the "nerve center" test established in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010), to determine a corporation's principal place of business and, in the chapter 15 context, its COMI.  *E.g.*, *In re Think3 Inc.*, No. 11–11925, 2011 Bankr. LEXIS 5349, at *17–18 (Bankr. W.D. Tex. Sept. 12, 2011) ("[C]ourts have often equated a corporate debtor's COMI with the debtor's 'principal place of business.'

Recently, the U.S. Supreme Court held that a corporation's 'principal place of business' is the place where a corporation's officers direct, control, and coordinate the corporation's activities, otherwise known as its 'nerve center.'") (quoting *Hertz Corp.*, 130 S. Ct. at 1186); *In re Gandi Innovations Holdings, LLC*, No. 09–51782, 2009 Bankr. LEXIS 2751, at *4–5 (Bankr. W.D. Tex. June 5, 2009) ("While the evidence regarding center of main interest is mixed, the court finds that the 'nerve center' for the [Debtors] is [in] Canada . . . the court concludes that, in these circumstances, the court should find that the center of main interests for [the Texas-incorporated entity] should be Canada."); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("[T]he court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."); *In re British Am. Isle of Venice, Ltd.*, 441 B.R. 713, 720 (Bankr. S.D. Fla. 2010) ("[I]n analyzing COMI courts have drawn a parallel to the 'nerve center' analysis described in [*Hertz Corp.*]").

59.     So important is this first factor that courts have recognized Canada as a the center of main interests for debtors' with Canadian nerve centers notwithstanding inconclusive results under the COMI factors.  *See In re Gandi Innovations Holdings*, 2009 Bankr. LEXIS 2751, at *4–5 (holding that Canada was the COMI and nerve center for each entity in a group of debtors that included both Texas and Alberta corporations despite a mixed analysis of the COMI factors because the Canadian entity controlled the Texas entity); *In re Petition of Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (holding that the debtor's COMI was in Canada notwithstanding inconclusive support of the fourth and fifth factors).

60.     Applying the Supreme Court's test in *Hertz Corp.*, the Fourth Circuit has held that a corporation's nerve center or principal place of business is not the location of its day-to-day

management activities, but rather where corporation's high-level officers directed, controlled, and coordinated its activities. *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 107 (4th Cir. 2011). The District Court for the Southern District of Texas adopted the Fourth Circuit's reasoning in *Central West Virginia Energy Co.* to conclude that a corporation's nerve center was located in Kuala Lumpur, Malaysia, even though the corporation had an operational presence in Houston. *Balachander v. AET Inc.*, Civ. A. No. H–10–4805, 2011 U.S. Dist. LEXIS 109787, at *21–24 (S.D. Tex. Sept. 27, 2011).

61.    Here, numerous facts support that the Debtor's principal place of business and nerve center are located in Canada, including:

(a)    All directors and officers of CESI are based in Canada;

(b)    All recent board meetings of the Debtors have taken place in Canada;

(c)    CESI is a public company in Canada with shares trading on the Toronto Stock Exchange under the ticker symbol TSX:CEZ;

(d)    All loans and credit facilities are based in Canada and governed by Canadian law;

(e)    Canadian management is involved with negotiating the terms and provisions of customer contracts;

(f)    Employee benefits and salaries are set by Canadian management;

(g)    The Debtors' books and records are maintained in Canada;

(h)    Expenditures over limits set pursuant to Calmena's Delegation of Authority[7] must be approved by Canadian personnel;

(i)    Insurance contracts for the Debtors are negotiated by Canadian personnel;

(j)    All intellectual property is held by CESI in Canada;

(k)    The Debtors' auditor, Deloitte LLP, is based in Calgary; and

(l)    The Debtors legal counsel, Burnet, Duckworth & Palmer LLP is based in Canada;

---

[7]    A true and correct copy of Calmena's Delegation of Authority is attached to the Petition as **Exhibit C**.

62.     The Debtors' operations and strategy are actively controlled and executed from Canada, making Canada the Debtors' principal place of business.  *See Avalos v. Cont'l Airlines, Inc.*, Civ. A. No. H–11–711, 2011 U.S. Dist. LEXIS 62527, at \*5–7 (S.D. Tex. June 10, 2011) (holding that the Continental's nerve center was Chicago after "Continental [] presented conclusive evidence that its . . . main activities—including management, human relations, legal services, payroll, and employee services—are all directed from [Chicago]"); *McCurdy v. Hydradyne, LLC*, Civ. A. No. 5:13CV2741, 2013 U.S. Dist. LEXIS 163974, \*6–8 (W.D. La. Nov. 18, 2013) (holding that a company's nerve center was Atlanta despite the company's subsidiaries operating in Louisiana because "[the company] makes all business decisions affecting the operations, management, and ownership of its business interests in Atlanta"); *Ebert v. Desco Corp.*, Civ. A. No. 5:10CV46, 2010 U.S. Dist. LEXIS 56165, at \*6 (N.D. W. Va. June 8, 2010) (holding that a company's nerve center was Ohio despite the company's subsidiaries operating in West Virginia because "[t]he operational and financial management of the company is directed and controlled from Columbus, Ohio; mergers and acquisition functions performed by or for are handled or managed from Columbus, Ohio; and administrative functions such as employee benefits, payroll administration, and legal services are performed in Columbus").

### 2.     Second Factor: The Debtors' Headquarters are Located in Canada.

63.     The second factor from *In re Ran* also indicates that the Debtors' COMI is in Canada.  The Debtors have operations in various resource basis internationally, including locations in the United States (Conroe and Oklahoma City), Mexico, Libya, and Colombia.  But the Calmena Entities' headquarters is unquestionably anchored in Calgary.  *See Craig v. Worldwide Mixed Martial Arts Sports Inc.*, No. CV–14–00183, 2014 U.S. Dist. LEXIS 92420, at

*9 (D. Ariz. July 8, 2014) ("'Headquarters' refers to a place from which something (such as a business) is controlled or directed.").

64.     The foregoing analysis of the first factor also applies to the second factor because the location of those who actually manage the Debtors is the same as location of the Debtors' headquarters.   All of the CESI's directors, officers, senior management, financial services, strategic operations, safety auditors, and investor relations are located in Calgary.   Accordingly, the second factor favors Canada as the Debtors' COMI.

### 3.     Third Factor: The Location of the Debtors' Primary Assets.

65.     The location of the Debtors' primary assets is not determinative and favors neither the United States nor Canada as the Debtors' COMI because the Debtors' remaining assets are minimal.   The Debtors' operations are conducted in resource basins internationally, and the primary assets used in the Debtors' operations are the conventional and directional drilling rigs and equipment.   In the past, Calmena Entities have had considerable assets in several countries, including Canada, the United States, and Mexico.   But the COMI analysis looks at a debtor's COMI as of the date the petition for recognition is filed.   *In re Ran*, 607 F.3d at 1025.

66.     As of the Petition Date, the Debtors do not have any active drilling contracts in the United States or Canada, and the Receiver has already terminated the majority of the employees in the United States and Canada.   Moreover, most of the rigs used by the Debtors are owned by Non-Debtor Entities and leased to the Debtors as necessary.   The only ongoing operations by the Calmena Entities are existing contracts by Non-Debtor Entities in Mexico. The remaining assets of the Debtor entity are tools, equipment, and inventory at the Conroe and Oklahoma City locations, as well as the assets at the corporate offices in Calgary.   Accordingly, this factor is not determinative and does not affect the analysis of the Debtors' COMI.

### 4. Fourth Factor: The Location of Debtors' Creditors.

67.     The location of the creditors favors Canada as the Debtors' COMI.  Most of the Debtors' major creditors—particularly, its two secured lenders—are located in Canada.  *Cf. Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 358 (5th Cir. 1997) (noting when applying a test under the "reasonable views of the majority of the creditors" that "there is room to argue about who speaks for the "majority" when two secured creditors dwarf all other trade creditors).  All of the Debtors' loans and credit facilities are held by Canadian entities, and its U.S. entities rely on these facilities, once directed through CESI's operating accounts at HSBC Bank Canada, for funding.  Although a number of trade creditors are located in the United States, a number of these creditors are shared with the Non-Debtor entities and are interested parties in the Canadian Proceedings.

### 5. Fifth Factor: The Jurisdiction Whose Law Would Apply to Most Disputes.

68.     The final factor, the jurisdictional law governing most disputes favors Canada as the Debtors' COMI.  Major decisions regarding the Debtors are made in Canada.  Also, the credit facilities with HSBC Bank Canada and Alpine Canada Corp., which together represent the overwhelming largest part of the Debtors' liabilities, are governed primarily by Canadian law.  Additionally, the Canadian Court issued Receivership Order pursuant to Canadian law.

69.     Based upon the foregoing, four of the COMI factors conclusively establish Canada as the COMI for the Debtors, one factor is not determinative, and none suggest against it.  Additionally, the Debtors "nerve center" is in Canada.  Accordingly, the Receiver requests that the Court recognize the Canadian Proceedings as a foreign main proceeding.

### G.   This Court Should Extend Comity and Cooperation to the Canadian Proceeding.

70.    Upon recognition of a foreign proceeding under 11 U.S.C. § 1517, a U.S. court must grant comity or cooperation to the foreign representative.  11 U.S.C. § 1509(b)(3).  This requirement is subject to any limitations that the court may impose consistent with the policy of chapter 15.  *Id.* §§ 1509(b); 1506.  Consistent with § 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee.  *Id.* § 1525(a).  Accordingly, the Receiver seeks comity and cooperation of this Court with respect to the Canadian Court and its Initial Order.

71.    A central tenet of chapter 15 is the importance of comity in cross-border insolvency proceedings.  *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012).

72.    The Supreme Court defined comity over a century ago as follows:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *see also Vitro*, 701 F.3d at 1043–44.

The exceptions to comity are construed especially narrowly when the foreign jurisdiction is like Canada, a sister common law jurisdiction with procedures akin to those in the United States.  *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976) (holding that not recognizing the Canadian judgment at issue would contravene the public policy of New York); *In re Petition of Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings . . . consistent with the treatment accorded by federal courts to foreign proceedings in 'sister common law jurisdictions.'").

73.     The extension of comity to Canadian orders has continued since the 2005 enactment of Chapter 15.  *Raymond Chabot, Inc. v. Serge Côté Family Trust*, No. 6:14-cv-03392, 2014 U.S. Dist. LEXIS 117128, at *6 (D.S.C. Aug. 22, 2014) (entering temporary restraining order assisting Canadian bankruptcy receiver and noting "the widely-accepted view that Canadian judgments are entitled to recognition and enforcement here"); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012) (holding that comity required deference to the procedures set forth in the Canadian insolvency proceeding and enforcement of the stay granted by the Canadian court and not a redetermination of whether a stay should have issued at all); *In re Metcalfe & Mansfield*, 421 B.R. at 698–99 (extending comity to Canadian CCAA order providing for a third party release and citing numerous cases where American courts have extended comity to Canadian judgments).

## H.     **Alternatively, the Canadian Proceeding Should Be Recognized As a Foreign Nonmain Proceeding.**

74.     In the event this Court does not recognize the Canadian Proceedings as foreign main proceedings, the Receiver submits that the Canadian Proceedings should be recognized as a foreign nonmain proceedings.

75.     The Canadian Proceedings shall be recognized as a foreign nonmain proceeding if the Debtors have an establishment in Canada.  11 U.S.C. § 1517(b)(2).  "Establishment" is defined as any place of operations where the debtor carries out a nontransitory economic activity.  11 U.S.C. § 1502(2).  When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied.  *See, e.g.*, *In re SPhinX*, 351 B.R. at 122.  Based upon the facts previously set forth, the Debtors hold an "establishment" in Canada,

and therefore the Receiver alternatively submits that recognition as a foreign nonmain proceeding is warranted.

**I.**     **Injunctive Relief Under § 1521 Is Warranted to Protect the Debtors.**

76.     The Receiver submits that injunctive relief under § 1521 is warranted to protect the Debtors.   Such analysis may be necessary should the Court recognize the Canadian Proceeding: (1) as a foreign main proceeding and grant additional relief under § 1521, or (2) as only a foreign nonmain proceeding.

*1.     Injunction Standards.*

77.     Certain relief under § 1521 (the "**1521 Relief**") may require the application of standards for injunctive relief.   The standards, procedures, and limitations applicable to an injunction may apply to relief under the following:

- o     11 U.S.C. §§ 1521(a)(1) (concerning staying of proceedings not already stayed by section 1520(a));

- o     1521(a)(2) (concerning staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a)),

- o     1521(a)(3) (concerning suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520 (a)); and

- o     1521(a)(6) (concerning extending relief granted under section 1519(a)).

11 U.S.C. § 1521(e).

*2.     Factors for Injunctive Relief.*

78.     The Receiver contends that it is not required that an adversary proceeding be filed and served on all parties in interest in order to obtain injunctive relief under chapter 15.   *In re Ho Seok Lee*, 348 B.R. 799, 801 (Bankr. W.D. Wash. 2006) (adversary proceeding not required for chapter 15 injunctive relief).

79.     The factors for injunctive relief are stated in *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979).  They are discussed below.

### a.     A substantial likelihood of success on the merits.

80.     There is no difficult real issue on whether the Canadian Proceedings should be recognized, as other courts have recognized Canadian insolvency proceedings and the proper documentation has been submitted.  The Receiver also contends that the center of main interests is in Canada, since the headquarters, management, most employees, and the majority of claims are in Canada.  Accordingly, there is a substantial likelihood that the mandatory relief under § 1520 will be ordered.

### b.     A substantial threat of irreparable injury if the injunction is not issued.

81.     The Receivership Order provides for a stay against seizure of assets and litigation similar to the automatic stay of 11 U.S.C. § 362(a).  The Receivership Order and papers submitted in conjunction therewith establishes that the Debtors are currently insolvent and unable to pay their debts as they become due.  The Receiver is concerned that these facts may cause creditors to seek prejudgment attachments and other remedies against the Debtors and their assets in the United States.  The Receiver is attempting to wind down and liquidate the Debtors assets through the Canadian Proceedings.  The Receiver is also exploring the possibility of selling certain Non-Debtor Entities as a going concern.  While these Non-Debtor Entities are outside the chapter 15 proceedings, the Calmena Entities have substantial intercompany claims among the various entities, and the Receiver's ability to monetize the intercompany claims will be adversely affected if 1521 Relief is not ordered.

> c.    *That the threatened injury to the movant outweighs any damage the injunction might cause to the opponent.*

82.    Any threatened injury to the Debtors outweighs any damage the injunction might cause to the opponents.  The 1521 Relief would actually benefit the Debtors' creditors by ensuring an equitable and orderly distribution of assets and facilitate the Canadian Proceedings. *See In re Crystallex Int'l Corp.*, No. 11–14074 (Bankr. D. Del. Dec. 28, 2011), ECF No. 20 (stating that failing to issue a restraining order against creditors in a chapter 15 case could "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors").

> d.    *That the injunction will not disserve the public interest.*

83.    The 1521 Relief will serve, not disserve, the public interest.  Such relief sets to facilitate a cross-border proceedings that will provide a benefit to the Debtors' estates.  The 1521 Relief is supported by notions of comity and will allow the Debtors to craft a productive solution for their estates.

84.    In sum, the relief sought is necessary and appropriate, in the interest of the public and international comity, consistent with the United States public policy, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief.

> ### 3.    *The Receiver Should Not Be Required to Post Bond.*

85.    The Receiver respectfully suggests that no bond be required under Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 7065(c).  A temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c).  Fed. R. Bankr. P. 7065.  The Receiver, who is carrying out his duties under the

BIA and the Receivership Order, is akin to a trustee, and any bond would necessarily come from the Debtors' assets.

86.     In the event that the Court finds that the Canadian Proceedings are foreign nonmain proceedings, the relief requested herein is still appropriate because the relief is discretionary.  *See* 11 U.S.C. § 1521 ("Upon recognition of a foreign proceeding, whether main or nonmain . . . the court may, at the request of the foreign representative, grant any appropriate relief . . . .").  The Receiver submits that the Court should exercise its discretion in this matter to assure an economical, expeditious, and equitable administration of the Debtors' estates.  Without such relief, the Debtors will be exposed to the risk of voluminous litigation and other actions against the estate, its assets, and the Receiver in the United States, which would result in a "race to the courthouse" among creditors and other parties in interest.

## VII.
## PRAYER

WHEREFORE, the Receiver respectfully requests that this Court enter the proposed order attached as **Exhibit A** to the Petition, thereby recognizing the Canadian Proceeding as the foreign main proceeding and granting the relief requested herein and all other relief, at law or in equity, to which the Receiver is justly entitled.  Alternatively, the Receiver requests that this Court recognize the Canadian Proceeding as a foreign nonmain proceeding and grant the relief requested pursuant to 11 U.S.C. § 1521.

**RECEIVER'S PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING PURSUANT TO SECTIONS 1515 AND 1517 OF THE UNITED STATES BANKRUPTCY CODE AND RELATED RELIEF**

47908489.8                                                                                                          32

Dated:  February 6, 2015

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:   /s/ *R. Andrew Black*
    R. Andrew Black (TX 02375110)
    Bob Bruner (TX 24062637)
    andrew.black@nortonrosefulbright.com
    bob.bruner@nortonrosefulbright.com
    Fulbright Tower
    1301 McKinney, Suite 5100
    Houston, TX 77010-3095
    Telephone:  (713) 651-5364
    Facsimile:  (713) 651-5246

Steve A. Peirce (TX 15731200)
steve.peirce@nortonrosefulbright.com
300 Convent Street, Suite 2100
San Antonio, TX  78205-3792
Telephone:  (210) 224-5575
Facsimile:  (210) 270-7205

Louis R. Strubeck, Jr. (TX 19425600)
Timothy S. Springer (TX24088460)
louis.strubeck@nortonrosefulbright.com
tim.springer@nortonrosefulbright.com
2200 Ross Avenue, Suite 2800
Dallas, TX  75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

**COUNSEL FOR CANADIAN RECEIVER**

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Receiver's Petition for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the United States Bankruptcy Code and Related Relief* has been served upon the persons entitled to notice on the attached service list by either U.S. first class mail, postage prepaid or by electronic notification on February 6, 2015.

 /s/ R. Andrew Black      

**RECEIVER'S PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING PURSUANT TO SECTIONS 1515 AND 1517 OF THE UNITED STATES BANKRUPTCY CODE AND RELATED RELIEF**

47908489.8                                                                                                      34

ADP, LLC
ONE ADP DRIVE MS-100
AUGUSTA, GA 30909


AIR COMFORT SOLUTIONS
908 MESSENGER LANE
MOORE, OK 73160


ALDINE I.S.D.
PO BOX 203989
HOUSTON, TX 77216-3989


ALPINE CANADA CORP.
3900, 350 – 7TH AVENUE SW
CALGARY, ALBERTA T2P 3N9


AMEGA WEST SERVICES LLC
7454 SOLUTION CENTER
CHICAGO, IL 60677-7004


AMERICAN EXPRESS
PO BOX 650448
DALLAS, TX  75265-0448


ANDY ROSENFELT
1322 3RD AVE SW
ARDMORE, OK 73401


ANTHONY DONARUMA
PO BOX 731
JONES, OK 73049


APPLIED PHYSICS SYSTEMS
281 EAST JAVA DRIVE
SUNNYVALE, CA 94089


AT&T
PO BOX 5014
CAROL STREAM, IL 60197-5014


BICO DRILLING TOOLS, INC.
P.O. BOX 301260
DALLAS, TX 75303-1260

BRENT GYORI
44 LAKEWAY BLVD
SYLVAN LAKE, AB T4S 2M9


BRUCE HOOPER
1311 N ELM
GUTHRIE, OK 73044


BRUCKNER BURCH, P.L.L.C.
ATTN: RICHARD J. BURCH
8 GREENWAY PLAZA, SUITE 1500
HOUSTON, TX 77046


BUGTIMES TERMITE AND PEST CONTROL LP
235 FM 1960 E BYPASS RD
HUMBLE, TX 77338


CALEB DECK
11665 MARBELLA DR
OKLAHOMA CITY, OK 73173


CANADA REVENUE AGENCY
REGIONAL INTAKE CENTRE FOR INSOLVENCY
SUITE 10, 9700 JASPER AVENUE NW
EDMONTON, AB T5J 4C8


CAVARE LTD.
7901-39 STREET
LEDUC, AB T9E 0B3


CENTERPOINT ENERGY
PO BOX 4981
HOUSTON, TX 77210-4981


CERIDIAN
PO BOX 10989
NEWARK, NJ 07193


CINTAS CORPORATION #440
PO BOX 650838
DALLAS, TX 75265-0838


CLARA HERNANDEZ
111 SUNLAKE WAY SE
CALGARY, AB T2X 3E4

CODY'S CLEANING
9319 SO HUDSON
OKLAHOMA CITY, OK 73139


COMCAST
PO BOX 660618
DALLAS, TX  75266-0618


COMMUNITY COFFEE COMPANY, LLC
PO BOX 60141
NEW ORLEANS, LA 70160


CONROE WELDING & SUPPLY INC
DRAWER 2588
CONROE, TX 77305


CONSOLIDATED COMMUNICATIONS
PO BOX 66523
SAINT LOUIS, MO 63166-6523


COX COMMUNICATIONS
PO BOX 248851
OKLAHOMA CITY, OK 73124-8851


DANCO INSPECTION SERVICE, INC
1324 SW 155TH ST
OKLAHOMA CITY, OK 73170


DANIEL NORRIS
#902, 220 - 12 AVE SE
CALGARY, AB T2G 0R5


DANIEL SALAZAR MARTINEZ
500 WICHITA AVENUE UNIT #6
MCALLEN, TX 78503


DAVE EMOND
16 CARNARVON WAY NW
CALGARY, AB T2K 1W4


DAWNE MORRISON
14117 N ROCKWELL AVE, APT 2103
OKLAHOMA CITY, OK 73142

DICE HOLDINGS INC
4939 COLLECTIONS CENTER DR
CHICAGO, IL 60693


DUSTIN AULT
1813 NW 195TH CIRCLE
EDMOND, OK 73012


DYNA-DRILL TECHNOLOGIES, INC
1200 ENCLAVE PARKWAY MAILDROP 417
HOUSTON, TX 77077


ELITE DOWNHOLE MOTORS, LLC
PO BOX 890086
OKLAHOMA CITY, OK 73189


ERIC SLAPE
9500 SW 28TH ST.
OKLAHOMA CITY, OK 73128


ESSENTIAL LOGISTICS, LLC
PO BOX 430453
HOUSTON, TX 77243


FEDEX
PO BOX 660481
DALLAS, TX 75266-0481


FIBICH, LEEBRON, COPELAND, BRIGGS & JOSEPHSON
ATTN: MICHAEL A. JOSEPHSON
1150 BISSONNET
HOUSTON, TX 77005


GE ENERGY OILFIELD TECHNOLOGY INC.
P.O. BOX 841696
DALLAS, TX 75284


GEOLOGICAL SURVEY OF ALABAMA
STATE OIL AND GAS BOARD
P.O. BOX 1368
MOBILE, AL 36633-1368

GOSS & JONES LP
3120 SW 131 STREET
OKLAHOMA CITY, OK 73170


GRAINGER
DEPT 87262647 PO BOX 419267
KANSAS CITY, MO 64141-6267


GREEN PARKWAY M.U.D MIKE ARTERBURN,TAX A/C
11500 NW FREEWAY, STE. 465
HOUSTON, TX 77092


GUARANTEED PEST SERVICE
P.O. BOX 5381
EDMOND, OK 73129


GUARDIAN
PO BOX 677458
DALLAS, TX 75267-7458


GULF COAST BANK AND TRUST COMPANY
PO BOX 203047
HOUSTON, TX 77216-3047


GYRODATA
PO BOX 650823
DALLAS, TX 75265


HALLIBURTON WORLDWIDE GMBH
BAARERSTRASSE 96
6300 ZUG, SWITZERLAND


HI-TECH SEALS INC. USA
105 GLADSTELL STREET
CONROE, TX 77301


HITHEM AGAMAWY
721 EVANSTON DRIVE NW
CALGARY, AB T3P 0N7
HOSEIN KAVIANI-FAR
PO BOX 905
STILLWATER, OK 74076

HSBC BANK CANADA
SPECIAL CREDIT DEPARTMENT
ATTN: JEFF LOVESTEAD
3RD FLOOR, 2910 VIRTUAL WAY
VANCOUVER, B.C. V5M 0B2


HUGG AND HALL EQUIPMENT CO
PO BOX 194110
LITTLE ROCK, AR 72219-4110


ILLINOIS DEPARTMENT OF NATURAL RESOURCES
ONE NATURAL RESOURCES WAY
SPRINGFIELD, IL 62702-1271


INTEGRATED APPLICATIONS ENGINEERING
518 SUGAR CREEK BLVD
SUGARLAND, TX 77478


INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES STAFF – INSOLVENCY
P. O. BOX 7346
PHILADELPHIA, PA 19101-7346


JAMES BROWN THE LOCKSMITH
1616 NORTH FRAZIER STE C
CONROE, TX 77301


JAMES SAAB
25822 MARSHBROOK LANE
SPRING, TX 77389


JOHN KING
4708 BRITANNIA DR SW
CALGARY, AB T2S 1J7


KALSI ENGINEERING
745 PARK TWO DRIVE
SURGAR LAND, TX 77478


KANSAS CORPORATION COMMISSION
ATTN: CONSERVATION DIVISION
266 N. MAIN ST., STE. 220
WICHITA, KS 67202-1513

KEN'S OILFIELD SUPPLY
P.O. BOX 263
MUSTANG, OK 73064


KEVIN QUINN
63 S. TERRACE MILL CIRCLE
THE WOODLANDS, TX 77382


KURT HYNES
1411A - 8TH AVENUE SE
CALGARY, AB T2G 0N1


LEE ALLEN
8712 NW  116TH TER
OKLAHOMA CITY, OK 73162


LEVINGE FREIGHT LINES
17463 IH 45 N
WILLIS, TX 77318


MCCARTHY TÉTRAULT LLP
ATTN: SEAN COLLINS
SUITE 4000
421 - 7TH AVENUE SW
CALGARY AB T2P 4K9


MICHAEL MCCULLAR
10957 MCDOWELL RD
CONROE, TX 77306


MIDLAND CENTRAL APPRAISAL DISTRICT
4631 ANDREWS HWY
MIDLAND, TX 79708-0002


MIKE CARTER
83 SUNSET PT
COCHRANE, AB T4C 0B4


MIKE SULLIVAN
HARRIS COUNTY TAX ASSESSOR-COLLECTOR
P. O. BOX 4622.
HOUSTON, TX 77210-4622


MONTGOMERY COUNTY ALARM DETAIL
P.O. BOX 2178
CONROE, TX 77305-2178

MONTGOMERY COUNTY MUD #19
11111 KATY FREEWAY #725
HOUSTON, TX 77079-2197


MURRAY WILCOX
112 COVE PARK GREEN
CALGARY, AB T3K 6L2


NATIONAL OILWELL VARCO
PO BOX 201224
DALLAS, TX 75320-1224


NDIC OIL AND GAS DIVISION
600 EAST BOULEVARD AVE DEPT 405
BISMARCK, ND 58505-0840


O & D MANUFACTURING, INC
PO BOX 277
WHITE OAK, TX 75693-0277


OFFICE OF THE UNITED STATES TRUSTEE
515 RUSK STREET, SUITE 3516
HOUSTON, TX 77002


OG & E
P.O. BOX 24990
OKLAHOMA CITY, OK 73124-0990


OIL CONSERVATION DIVISION
1220 SOUTH ST. FRANCIS DR.
SANTA FE, NM 87505


OKLAHOMA CHILD SUPPORT SERVICES
PO BOX 248822
OKLAHOMA CITY, OK 73124


OKLAHOMA CORPORATION COMMISSION
OIL AND GAS DIVISION
2101 N LINCOLN BLVD
OKLAHOMA CITY, OK 73105


OKLAHOMA COUNTY TREASURER
P.O. BOX 268875
OKLAHOMA CITY, OK 73126-8875

OKLAHOMA NATURAL GAS COMPANY
PO BOX 219296
KANSAS, MO 64121-9296

OKLAHOMA TAX COMMISSION
PO BOX 26930
OKLAHOMA CITY, OK 73126-0930

P&S PROPERTIES LLC
11449 OUTPOST COVE
WILLIS, TX 77318

PETER BALKWILL
23 WEXFORD WAY SW
CALGARY, AB T3H 0H1

PITNEY BOWES
PO BOX 371887
PITTSBURGH, PA 15250-7887

PRECISION INDUSTRIES INCORPORATED
PO BOX 1088
MCPHERSON, KS 67460

PSI SECURITY
P.O. BOX 15008
DEL CITY, OK 73155

PV FLUID PRODUCTS INC.
5150 BLALOCK ROAD
HOUSTON, TX 77041

QUALITY MACHINE SERVICES INC.
8412 SW 8TH STREET
OKLAHOMA CITY, OK 73128-4228

QUILL
P.O. BOX 37600
PHILADELPHIA, PA 19101-0600

RAILROAD COMMISSION OF TEXAS
P.O. BOX 12967
AUSTIN, TEXAS 78711-2967

RANDALL DIEMERT
98 CITADEL MEADOW CLOSE
CALGARY, AB T3G 4T4


RED WING SHOE STORE
2105 D WEST DAVIS STREET
CONROE, TX 77304


RIGDATA
PO BOX 820547
FORT WORTH, TX 76182-0547


RSVP SERVICES INC.
501 WEST EDMOND RD.
EDMOND, OK 73003-5622


SHELLI'S CLEANING SERVICE
610 SW 52ND ST. #108
LAWTON, OK 73505


SIX RECRUITMENT
800 TOWN AND COUNTRY BLVD SUITE 300
HOUSTON, TX 77024


STABIL DRILL
DEPT. 2162 P.O. BOX 122162
DALLAS, TX 75312-2162


STEVE DAVIS
17200 HARDWOOD PL
EDMOND, OK 73012


STI, LLC
PO BOX 52288
LAFAYETTE, LA 70505


SYDNEY ENERGY SERVICES, INC
1116 SMALLWOOD LANE
HOUSTON, TX 77023


TARA HOWELL
2623 LIONEL CRESCENT SW
CALGARY, AB T3E 6B1

TAX AND REVENUE ADMINISTRATION – ALBERTA
9811 - 109 STREET
EDMONTON, AB T5K 2L5


TAX ASSESSOR/COLLECTOR - TAMMY MCRAE
400 N SAN JACINTO ST
CONROE, TX 77301-2823


TBS FACTORING SERVICE
PO BOX 210513
KANSAS CITY, MO 64121


TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIVISION - BANKRUPTCY SECTION
P.O. BOX 13528 CAPITOL STATION
AUSTIN, TX 78711


TEXAS WORKFORCE COMMISSION
TWC BUILDING - REGULATORY INTEGRITY DIVISION
101 EAST 15TH STREET
AUSTIN, TX 78778


THE CITY OF OKLAHOMA CITY
P.O. BOX 26570
OKLAHOMA CITY, OK 73126-0570


THE WAGGONERS TRUCKING
P.O. BOX 301420
DALLAS, TX 75303-1420


TOYOTA FINANCIAL SERVICES
COMMERCIAL FINANCE DEP. 2431
CAROL STREAM, IL 60132-2431


TRAVIS LYSAK
FASKEN MARTINEAU DUMOULIN LLP
3400 350 7TH AVE SW
CALGARY AB T2P 3N9


TY HENDREN
3210 W LAKEVIEW
STILLWATER, OK 74075

TYCO INTEGRATED SECURITY LLC
PO BOX 371967
PITTSBURGH, PA 15250-7967


UNITED MACHINE WORKS
PO BOX 525
NEW WAVERLY, TX 77358


UNITED STATES ATTORNEY GENERAL
DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530


US BANK
OFFICE EQUIPMENT FINANCE SERVICES
ST. LOUIS, MO 63179-0448


US EPA REGION 6 BANKRUPTCY CONTACT
FOUNTAIN PLACE
1445 ROSS AVE.
DALLAS, TX 75202-2750


UTAH DEPARTMENT OF NATURAL RESOURCES
DIVISION OF OIL, GAS AND MINING
1594 WEST NORTH TEMPLE, SUITE 1210
BOX 145801
SALT LAKE CITY, UTAH 84114-5801


VERIZON WIRELESS
PO BOX 660108
DALLAS, TX 75266-0108


WALTER CHANG
3154 LEDUC CRES. SW
CALGARY, AB T3E 5W9


WASTE MANAGEMENT
PO BOX 660345
DALLAS, TX 75266-0345


WEATHERFORD ARTIFICIAL LIFT SYSTEMS, LLC
PO BOX 301003
DALLAS, TX 75303

WORKER'S COMPENSATION BOARD – ALBERTA
9912 107 ST. NW
EDMONTON, AB T5K 1G5


WYNDHAM GARDEN HOTELS
2101 SOUTH MERIDIAN
OKLAHOMA CITY, OK 73108


WYOMING OIL AND GAS CONSERVATION COMMISSION
P.O. BOX 2640
CASPER, WY 82602


ZACHARY SEESE
1100 CEDARCREST ST
NORMAN, OK 73071